**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Criminal Action No. 1:23-cr-00329-RMR

UNITED STATES OF AMERICA,

     Plaintiff,

v.

ANTOAN RABAN,

     Defendant.

---

**ORDER**

---

Pending before the Court are Defendant Antoan Raban's Motion for Reconsideration, ECF No. 45, and the Government's Motion for Reconsideration, ECF No. 47.  Both parties seek reconsideration of this Court's oral ruling on Defendant's Motion to Suppress, ECF No. 19. For the reasons stated below, the Court has reconsidered its Order entered on February 6, 2024. After careful review of the record, the Court denies the motion to suppress.

     **I.**     **BACKGROUND[1]**

On May 23, 2023, Denver Police Department Officers Danielson and Moldenhauer pulled Mr. Raban over for minor traffic violations. Officers immediately noticed a spilled

---

[1] The Court relies on the background facts provided in the parties' briefing and the Court's findings of fact at the motions hearing.  *See* ECF No. 19 at 1-2; ECF No. 22 at 2-5; ECF No. 42; ECF No. 45 at 1-2; ECF No. 47 at 1-2.

beer can in the backseat. Mr. Raban did not have his license or registration, so he was removed from the vehicle and seated on the curb to be fingerprinted for identification. Officer Danielson then conducted a protective sweep of Mr. Raban's vehicle and found a firearm under the driver's seat. Mr. Raban was arrested and charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Raban moved to suppress all evidence obtained as a result of the search, on the grounds that the search was unlawful.

On February 6, 2024, the Court held an evidentiary hearing on the motion to suppress. ECF Nos. 40, 42. At the hearing, the Court concluded the protective sweep was lawful and denied the motion to suppress. *Id.* The Court relied on the following factors to conclude that Officer Danielson had reasonable suspicion that Mr. Raban was armed and dangerous:

- Mr. Raban had face tattoos that the officers recognized as associated with the Tre Tre Crips gang;
- Mr. Raban was stopped in an area known to the officers as Blood gang territory with high criminal and gang activity. This was rival gang territory to the Crips;
- The area had recently seen an increase in shootings;
- Mr. Raban was stopped leaving a gas station that both officers recognized as a dangerous area known for weapons, drugs, and violent crimes;
- Dashae Armstrong, the brother of Mr. Raban's girlfriend, parked his vehicle across from Mr. Raban during the stop. Mr. Armstrong was known to both officers as a Tre Tre Crips gang member with a violent criminal history;
- Mr. Armstrong called Mr. Raban's cell phone during the stop and stared at the officers throughout the stop; and
- Mr. Raban was frisked and found to be wearing an ankle monitor.

2

ECF No. 42 at 113-117. Given the totality of the circumstances, the Court found that Officer Danielson had reasonable suspicion to justify the protective sweep. *Id.* The Court also stated, "I find it hard to imagine that these officers, given what they knew, were going to release this man with a citation." *Id.* at 116:23-25–117:1-8. Immediately after the Court's ruling, Mr. Raban's counsel argued "[i]f the Court has found that the officers were not credible in saying they were going to allow Mr. Raban back in the car, then they cannot justify the protective sweep." *Id.* at 117:13-21. The Court declined to reconsider its ruling at that time. *Id.*

Two days later, the Court decided that it was in the interest of justice to reconsider its order. ECF No. 41. Therefore, pursuant to the Court's inherent authority to reconsider its interlocutory rulings, the Court issued an order inviting the parties to file motions for reconsideration. *Id.; see Price v. Philpot*, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (a district court has discretion to revise interlocutory orders prior to entry of final judgment); *Marshall v. United States*, 145 A.3d 1014, 101718 (D.C. 2016) (so long as the district court has jurisdiction over the case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so) (citing *United States v. Jerry*, 487 F.2d 600, 60405 (3d Cir. 1973)); *see also* Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."). In accordance with the Court's order, Mr. Raban and the Government each filed the present motions to reconsider. See ECF Nos. 45, 47.

## II.     MOTIONS FOR RECONSIDERATION

In order for a protective sweep to be justified, two requirements must be met: (1) the officer must have reasonable suspicion to conclude that the suspect is armed and dangerous, and (2) the officer must reasonably believe the suspect "may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). Both parties ask the Court to reconsider its order regarding whether the second *Long* requirement was met.[2]

Mr. Raban asks the Court to find that the protective sweep was unlawful because Mr. Raban did not have immediate access to any potential weapons in the vehicle. ECF No. 45 at 2. Specifically, Mr. Raban argues "[i]n light of this Court's finding that the officers were not going to allow Mr. Raban access to the car, the government cannot meet its burden to prove that Mr. Raban could realistically gain possession of a weapon from the car." *Id.* at 3.

The Government argues that to the extent the Court determined the second requirement of *Long* was not met, the Court should reconsider this conclusion and find that the second requirement was met. ECF No. 47 at 2-3. The Government also requests that the Court reconsider its finding that Officer Danielson would not have returned Mr. Raban to the vehicle at the conclusion of the traffic stop. *Id.* at 5-6.

The Court finds that it is in the interest of justice to reconsider its order and clarify its ruling as to the second *Long* requirement.

---

[2] Mr. Raban argues in the alternative that the Court should reconsider its ruling that the first *Long* requirement was met—that is, that Officer Danielson had reasonable suspicion that Mr. Raban was armed and dangerous. *Id.* at 2 n.1. A motion to reconsider is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Upon review, the Court does not find it appropriate to reconsider its ruling as to the first *Long* requirement.

### III.      RECONSIDERATION OF MOTION TO SUPPRESS

Reconsideration is warranted. The Court now turns to the merits of the parties' arguments on the motion to suppress.

### A.      Legal Standard

The Fourth Amendment protects against unreasonable searches of "persons, houses, papers, and effects." U.S. Const. amend. IV. A vehicle is an "effect" protected by the Fourth Amendment. *Byrd v. United States*, 138 S. Ct. 1518, 1526, 200 L.Ed.2d 805 (2018). While officers are generally required to have a warrant to search, a warrantless search is reasonable in some situations—including certain protective sweeps of vehicles. *Long*, 463 U.S. at 1050–51; *United States v. Dennison*, 410 F.3d at 1210 (10th Cir. 2005). Because the exception for protective sweeps exists for officer safety, protective sweeps are limited "to those areas in which a weapon may be placed or hidden." *Long*, 463 U.S. at 1049–51. The sweep should not only protect officers during a stop, but also should protect officers once they release a defendant back to his vehicle. *See Arizona v. Gant*, 556 U.S. 332, 352 (2009) (Scalia, J., concurring).

It is well established that an officer may conduct a protective sweep of a suspect's vehicle when two requirements are met: (1) the officer has reasonable suspicion to conclude that the suspect is armed and dangerous, and (2) the officer reasonably believes the suspect "may gain immediate control of weapons." *Long*, 463 U.S. at 1049; *accord United States v. Canada*, 76 F.4th 1304, 1306 (10th Cir. 2023).

**B.     Analysis**

At the evidentiary hearing, the Court found that Officer Danielson had reasonable suspicion to conclude Mr. Raban was armed and dangerous. *See* ECF No. 42 at 113-16. Thus, for the reasons stated on the record, the first *Long* requirement was met.

The Court now considers whether *Long*'s second requirement—that Officer Danielson reasonably expected Mr. Raban could "gain immediate control of weapons"— was met. The parties agree that there are three situations where *Long*'s second requirement can be met: (1) if the suspect could "break away from police control and retrieve a weapon from his automobile"; (2) "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside"; and (3) "if the suspect may be permitted to reenter the vehicle before the ... investigation is over, and again, may have access to weapons." *Canada*, 76 F.4th at 1310.

The Government argues the first situation applies because Mr. Raban "could have broken away from officers" to access a weapon in his car. The Government cites to *United States v. Dennison*, 410 F.3d 1206 (10th Cir. 2005) and *United States v. Palmer*, 360 F.3d 1243 (10th Cir. 2004) in support. However, the body camera footage shows that at the time of the protective sweep, Mr. Raban was five to ten feet away from the vehicle, seated on the curb with his legs crossed, and surrounded by six police officers. *See* Officer Danielson Body Camera Footage, Gov't Ex. 1 at 6:45 to 7:23. Officer Moldenhauer testified that having a suspect seated with his legs crossed is a "control tactic" so that officers are "able to see if [the suspect] potentially will run if they uncross their feet" and this tactic "limits them from doing that." ECF No. 42 at 80:8-14.  The potential that Mr.

6

Raban could have broken away and retrieved a weapon from the vehicle without being stopped by the six police officers surrounding him was low. These circumstances do not support the protective sweep and are not sufficient to carry the Government's burden.

Next, the Government argues Officer Danielson would have returned Mr. Raban to his car at the conclusion of the traffic stop. In either situation two or three, identified in *Canada*, the Court would need to conclude that Mr. Raban would have been allowed to have access to his vehicle as well as any weapons that might have been in the car. The Government meets this burden so long as officers—at the time of the search—had reason to believe they would not detain a suspect further. *See Canada*, 76 F.4th at 1310 (citing *United States v. Vaccaro*, 915 F.3d 431, 437-38 (7th Cir. 2019)). The Government argues it has met its burden here because, at the time he conducted the protective sweep, Officer Danielson was "planning to release Mr. Raban to his car with a citation." ECF No. 47 at 8.  Mr. Raban argues that because the Court found that the officers were not going to allow Mr. Raban to access his car, the Government cannot meet its burden. ECF No. 45 at 3. This is the crux of the matter: whether it is reasonable to believe Mr. Raban would have been allowed to return to his vehicle, where he would have access to any weapons that might be in the vehicle.

Importantly, the standard by which the Court must judge this reasonableness is an objective one. Reasonableness remains the Fourth Amendment's touchstone, and the constitutional inquiry turns on whether an objectively reasonable officer could have believed Mr. Raban was armed and dangerous and could gain immediate control of weapons. *See Terry v. Ohio*, 392 U.S. 1, 20 (1968); *Brigham City v. Stuart*, 547 U.S. 398,

7

404 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action."); *United States v. Holmes*, 385 F.3d 786, 790 (D.C. Cir. 2004) ("The propriety of a search under the Fourth Amendment depends on 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's own subjective intent in executing the search.") (quoting *Scott v. United States*, 436 U.S. 128 (1978)).

The Government argued repeatedly in its response to the motion to suppress (ECF No. 22), as well as at the hearing, that one of the reasons the search was warranted was because of Mr. Raban's criminal history. That criminal history included prior charges for possession of weapons and potential involvement with a homicide, albeit several years prior to the stop.[3] However, during cross examination of the officers, it became clear that Officer Danielson was not aware of Mr. Raban's criminal history <u>at the time</u> he conducted the protective sweep.

---

[3] For example, the Government represented:

- In doing a criminal history check of the defendant, it showed the defendant to have multiple weapons offenses to include involvement in a homicide and that the defendant was currently on parole for a First-Degree Assault Conviction. ECF No. 22 at 7-8, ¶¶ 3, 6.
- While utilizing a law enforcement database, like in *Hammond*, officers found that the defendant had a history of weapons offenses. *Id.* at 10.
- The defendant was a gang member, in a neighborhood that was in his rival gang's territory, currently on parole for assault, and prior weapons offenses in his history. *Id.* at 13.
- Here, the defendant has prior convictions for weapons offenses, had some involvement in a homicide, and was on parole for a violent offense. *Id.* at 14.

The following exchange occurred at the evidentiary hearing between Mr. Raban's counsel and Officer Moldenhauer:

> Q. So at that point, you tell your cousin and partner, Officer Danielson, you want to have him step out, meaning the person who gave the name of Mr. Raban?
> A. Yes, ma'am.
> Q. Because we're going to fingerprint him; right?
> A. Yes, ma'am.
> Q. You didn't say that Mr. Raban was a felon, you didn't tell Officer Danielson that?
> A. No, ma'am.
> Q. You didn't tell him that the person whose name you ran was on parole; right?
> A. No, ma'am.
> Q. You didn't tell him that he had a weapons history?
> A. No, ma'am.
> Q. In fact, you didn't tell him about any criminal history; right?
> A. Correct.
> Q. Because at this point, you don't even know that this is Antoan Raban?
> A. Correct.

ECF No. 42 at 86:1-21. This testimony clearly established that at the time Officer Danielson conducted the protective sweep, Officer Moldenhauer had not shared the information about Mr. Raban's criminal history. If Officer Danielson did not know about the criminal history, it could not have been a basis for his decision to conduct the protective sweep.[4]

---

[4] At the hearing, the Government asked the Court to consider the "collective knowledge" doctrine while listening to the officers' testimony. ECF No. 42 at 4:10-14. The Government argued that, under the collective knowledge theory, because Officer Moldenhauer had knowledge of Mr. Raban's criminal history, that knowledge was imputed to Officer Danielson. *Id.* at 94:15-96:14. There are two categories of the collective knowledge doctrine: "horizontal collective knowledge" and "vertical collective knowledge." *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008). Horizontal collective knowledge applies to "situations where a number of individual law enforcement officers have pieces of the probable cause puzzle, but no single officer possesses information sufficient for probable cause. In such situations, the court must consider whether the individual officers have communicated the information they possess individually, thereby pooling their collective knowledge to meet the probable cause threshold." *Id.* (citations omitted). Vertical collective knowledge applies to situations "where one officer has probable cause and instructs another

The Government's assertion—that Officer Danielson knew of Mr. Raban's criminal history, but that he nevertheless would have returned an individual with Mr. Raban's criminal history to his vehicle without an arrest—is what the Court did not find credible. But the Government's assertion—that Officer Danielson was aware of Mr. Raban's criminal history—has been disproven by the record. It is true that, at the evidentiary hearing, the Court made the "clarifying statement" that it "did not find the officers' argument that they were going to release [Mr. Raban] credible" . . . because it was "hard to imagine that these officers, given what they knew, were going to release this man with a citation." ECF No. 42 at 116-117. In making this statement, the Court reasoned that, given Mr. Raban's criminal history, it was not credible that officers would have returned him to his vehicle without an arrest. However, as Mr. Raban's counsel pointed out during the hearing, and as explained above, the chronology of events in this case—particularly regarding the information available to officers at the time the protective sweep was conducted—was either confused or misstated by the Government.

The Tenth Circuit has made it clear that the timing matters because the question is what the officer believed <u>at the time of the protective sweep</u>. *See Canada*, 76 F.4th at 1310. Thus, on reconsideration, the Court has carefully reviewed the chronology of events with the benefit of the transcript and body camera footage. Based on its thorough review, the Court now finds that <u>at the time he conducted the protective sweep</u>, it was objectively

---

officer to act but does not communicate the corpus of information known to the first officer that would justify the action." *Id.* at 1345-46. The horizontal collective knowledge category does not apply here because Officer Moldenhauer did not communicate the information regarding Mr. Raban's criminal history to Officer Danielson. Nor does the vertical collective knowledge category apply here because, although Officer Moldenhauer knew of Mr. Raban's criminal history, he did not instruct Officer Danielson to search the vehicle. Accordingly, the Court finds the collective knowledge doctrine inapplicable.

reasonable for Officer Danielson to conclude that Mr. Raban could have been permitted to return to his vehicle after receiving a traffic citation.

The body camera footage, together with the officers' testimony, shows that after Mr. Raban confirmed he did not have his license or registration, he gave the officers his name. *See* ECF No. 40 at 41:7-18. Officer Moldenhauer then went to his patrol car to run a criminal history check on the name Mr. Raban had given. *Id.* at 81:8-16. Meanwhile, Officer Danielson stayed at the driver's side of the vehicle with Mr. Raban seated inside. After running the criminal history check, Officer Moldenhauer returned to the vehicle and directed Officer Danielson to remove Mr. Raban from the vehicle so they could fingerprint him and "gain a positive identification on him." *Id.* at 78:8-14; 81:20-25-82:1. Officer Danielson testified that they needed to obtain Mr. Raban's identification because "[w]e have to identify the person you are going to issue a citation to." *Id.* at 25:11-14. At this point, Officer Moldenhauer had not told Officer Danielson anything about the results of the criminal history check. *Id.* at 86:1-21. Instead, he simply told Officer Danielson "I think he's good." *Id.* at 86:22-25–87:2-3; *see also* Officer Moldenhauer Body Camera Footage, Gov't Ex. 2A.

Immediately after Mr. Raban was removed from the car and patted down, Officer Danielson conducted the protective sweep. Officer Danielson testified that he conducted the protective sweep because "prior to releasing [Mr. Raban] with a citation back into the vehicle" he needed to "ensure[] that there were no weapons that would have been within immediate reach of him . . . ." ECF No. 42 at 27:1-9. Throughout his testimony, Officer Danielson reiterated that, based on what he knew at the time, he believed Mr. Raban was

going to be given a citation for the traffic violations and permitted to return to his vehicle. *See id.* at 25:11-16; 27:2-9; 55:1-13; 56:4-25; 57:1-22; The Court notes that Officer Moldenhauer's report states, "Officer Danielson conducted a protective sweep of the vehicle due to Raban's weapons history and the alcohol being located in the vehicle. We were also going to have Raban return to the vehicle prior to issuing him a citation so the protective sweep was to ensure there were no weapons within the immediate reach of Raban." Govt. Ex. 6.

As previously noted, at the conclusion of the hearing, the Court did not find it credible that Mr. Raban would have been returned to the vehicle given what the officers knew about Mr. Raban's criminal history. However, the Court's review of the record shows that Officer Danielson was not aware of Mr. Raban's criminal history when he conducted the protective sweep. To the contrary, Officer Moldenhauer told him "I think he's good" referring to Mr. Raban. Thus, the Court concludes that, based on the information available to him at the time, Officer Danielson could have reasonably believed that Mr. Raban was going to receive a citation for the traffic violations and then be permitted to return to the vehicle—whether to drive away, obtain his belongings, obtain a ride from his girlfriend's brother across the street, or otherwise. *See Canada*, 76 F.4th at 1310  (finding the second *Long* requirement satisfied because "at the time of the sweep, the officers had reason to believe they would not detain Defendant after the investigation."); *see also United States v. Alexander*, No. 20-3238, 2022 WL 414341, at *5 (10th Cir. Feb. 11, 2022), *cert. denied*, 143 S. Ct. 134, 214 L. Ed. 2d 39 (2022) ("The officers had reason to believe that Defendant would not be detained after the investigation. There was a possibility that he

had an outstanding warrant against him, just as there was a possibility that the investigation at the scene would lead to his arrest; but even if those possibilities were more likely than his ultimate release, there would still be sufficient reason to believe (when the protective search was conducted) that he would ultimately be released.").

Again, the standard by which the officer's actions are to be judged is an objective rather than subjective one. Under an objective standard, it is reasonable to believe, based upon the totality of the circumstances, that Mr. Raban may have been allowed to leave the scene with a citation and return to his car. Accordingly, the Court finds that the second *Long* requirement was met.

Because the Court finds that both requirements of *Long* were met, the protective sweep was lawful. Mr. Raban's motion to suppress is denied.

## IV.   CONCLUSION

For the reasons stated above, Defendant Antoan Raban's Motion for Reconsideration, ECF No. 45 and the Government's Motion for Reconsideration, ECF No. 47 are **GRANTED**.  Upon reconsideration, Defendant's Motion to Suppress, ECF No. 19, is **DENIED**.

DATED:  May 1, 2024.

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge

13